IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| OLLIE SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18-cv-981-WKW-WC |
| ) | |
| WAYNE GARLOCK, et al., ) | |
| ) | |
| Defendants. ) | |

## RECOMMENDATION OF MAGISTRATE JUDGE

Pending before the Court are the Motion to Dismiss filed by the Alabama Attorney General, Alabama Secretary of State, and Butler County Circuit Clerk ("State Defendants") (Doc. 13); Motion to Dismiss filed by the Butler County Sheriff, Butler County Coroner, Butler County Probate Judge, and Butler County Sheriff ("County Defendants")  (Doc. 15); and Motion to Dismiss filed by the United States Attorney General and United States Attorney for the Middle District of Alabama ("Federal Defendants") (Doc. 34).  Plaintiff has responded to all motions (Docs. 31 and 37), and the County Defendants filed a reply (Doc. 33). This case was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 for further proceedings and determination or recommendation as may be appropriate. Doc. 3.

Upon consideration of the above pending motions and for good cause shown, the undersigned RECOMMENDS that this case be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

I. **BACKGROUND**

This case arises out of Plaintiff's candidacy for the position of coroner in Butler County, Alabama. Doc. 1 at 1. Plaintiff and Defendant Wayne Garlock were opponents in the March 2018 Democratic primary election. Doc. 13 at 2. Scott won the primary election, but Garlock ran against Plaintiff as a write-in candidate in the general election. *Id.* at 2. In the general election, Garlock received 3,746 votes and Scott received 3,488 votes. *Id.* at 2–3.

Plaintiff claims he was elected as coroner because he received 3,488 votes in addition to another 2,335 Alabama Democratic Party straight-party votes. Doc. 1 at 1. According to Defendants, however, as with the all the other races, a party's straight-ticket votes are included in each candidate's total number of votes. Doc. 13 at 3. Plaintiff does not allege and there are no records showing that he requested a recount within forty-eight hours of the election results pursuant to Ala. Code § 17-16-21 or that he filed an election contest under Ala. Code § 17-16-40, *et seq.*, within twenty days of the announcement of election results. *Id.* at 3.

In his Complaint, Plaintiff claims the Federal Bureau of Investigation, the Alabama Bureau of Investigation, the Alabama Attorney General, and the Alabama Secretary of State knew or should have known that he won the election.[1] *Id.* He claims the following offenses against him without identifying which Defendant allegedly committed the offense: failure to acknowledge that he is the elected coroner of Butler County; failure to

---

[1] Plaintiff did not name the Federal Bureau of Investigations or the Alabama Bureau of Investigation as defendants, and he did not attempt to serve either of these agencies with the Complaint.

award him official access to the legal and lawful rights and privileges due to be bestowed upon him; and failure and refusal to inform the public and government officials that the 2,335 straight party votes plus the other 3,488 votes would be "more than enough [for him] to declare victory." Doc. 1-1. He further claims that the Federal Defendants failed to protect his "politically elected status rights." *Id.* Finally, he claims that the State and Federal Defendants failed to monitor and "act in the motion of justice," thereby causing others to violate his rights. *Id.* He purports to bring this lawsuit pursuant to the 14th Amendment of the U.S. Constitution, the U.S. Federal Common Human Rights, the U.S. Public Accommodation Rights, and U.S. Equal Protection Rights and Due Process. He also purports to bring state law claims under Alabama Common Human Rights and Alabama Equal Access Rights and Equal Protection Rights.[2] *Id.*

## II.    DEFENDANTS' ARGUMENTS

The County Defendants argue that the doctrines of federalism and comity prevent this Court from having jurisdiction over Plaintiff's claims and that federal jurisdiction over

---

[2] Although Plaintiff does not cite to 42 U.S.C. § 1983 in his Complaint, § 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights. *Conn v. Gabbert,* 526 U.S. 286, 290 (1999). To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove: (1) a violation of a constitutional right and (2) that the alleged violation was committed by a person acting under the color of state law or a private individual who conspired with state actors. *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016). Section 1983 also applies to local government units, *Monell v. Dept. of Social Services of the City of New York*, 98 S. Ct. 2018, 2035-36, but it does not apply when the defendants are acting under color of federal law, *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978). Instead, an action under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), is the federal analog to 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250, 255 (2006). However, a detailed analysis of the requirements and restrictions of § 1983 and *Bivens* actions is not required because, as explained below, the undersigned finds that Plaintiff's allegations do not establish a violation of any of the constitutional rights he identifies in his Complaint.

election cases is limited to cases falling under 28 U.S.C. § 1344 (denial of the right to vote based on race, color, or previous condition of servitude) or cases sufficient to state a claim under the Fourteenth Amendment. Doc. 16 at 3. They further argue that Plaintiff has failed to state claims under any Alabama law. *Id.* at 6–7. Finally, they argue that Defendant Garlock is entitled to qualified immunity.

The State Defendants argue that Plaintiff lacks standing to bring this lawsuit – and therefore this court does not have jurisdiction – because none of the Defendants have the ability to remove a certified election winner and replace him with a candidate who was not certified as the winner. Doc. 13 at 4. They further argue, to the extent Plaintiff seeks an injunction requiring the Attorney General and Secretary of State to follow state law, that the claims are barred by the Eleventh Amendment, and federal courts lack jurisdiction to compel state officials to follow state law. *Id.* Finally, they assert that no federal cause of action exists for a state election contest.

The Federal Defendants argue that Plaintiff has not shown a waiver of sovereign immunity, which prevents this Court from having jurisdiction. Doc. 35 at 2. They further argue that, even construing Plaintiff's Complaint broadly, Plaintiff cannot proceed under a *Bivens* claim, a Writ of Mandamus, or the Administrative Procedures Act. *Id.* at 3–5. Finally, even if Plaintiff could establish jurisdiction and a waiver of sovereign immunity, Plaintiff's Complaint fails to state a claim on which relief can be granted. The allegations against the Federal Defendants are limited to a few conclusory and vague lines that they failed to protect his voting rights and allowed others to violate them, and Plaintiff cannot

obtain his requested relief – an order directing the Federal Defendants to conduct a review and investigation of the election – under any possible theory. *Id.* at 6–7.

## III. STANDARD OF REVIEW

When ruling on a motion pursuant to Rule 12(b)(6), "the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). In order to state a claim upon which relief can be granted, a complaint must satisfy the pleading standard of Rule 8 of the Federal Rules of Civil Procedure.

Rule 8 requires that a plaintiff submit a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In general, then, a pleading is insufficient if it offers only mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Thus, in order to survive Defendants' motions to dismiss, Plaintiff's Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "A claim is factually

plausible where the facts alleged permit the court to reasonably infer that the defendant's alleged misconduct was unlawful. Factual allegations that are 'merely consistent with' a defendant's liability, however, are not facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports the claims alleged in the complaint, then the claim is "plausible" and the motion to dismiss should be denied and discovery in support of the claims should commence. *Twombly*, 550 U.S. at 556. But, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Ultimately, in assessing the plausibility of a plaintiff's claims, the court is to avoid conflating the sufficiency analysis with a premature assessment of a plaintiff's likelihood of success because a well-pleaded claim shall proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Finally, when considering a pro se litigant's allegations, a court holds him to a more lenient standard than those of an attorney. *Barnett v. Lightner*, No. 13CV0482, 2014 WL 3428857, at *2 (S.D. Ala. July 15, 2014) (citing *Haines v. Kerner,* 404 U.S. 519, 520 (1972)). A court also cannot rewrite a pro se litigant's deficient pleading to sustain an action. *Id.* (quoting *GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1369

(11th Cir. 1998), *overruled on other grounds by Randall v. Scott,* 610 F.3d 701, 710 (11th Cir. 2010) (relying on *Iqbal,* 556 U.S. 662)). The court treats factual allegations as true, but it does not treat conclusory assertions or a recitation of a cause of action's elements as true. *Id.* (citing *Iqbal,* 566 U.S. at 681). Moreover, a pro se litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." *Id.* (quoting *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir.), *cert. denied,* 493 U.S. 863 (1989)).

## IV. DISCUSSION

"The application of state-law equity principles regarding whether to enjoin or set aside an election presents a complex issue." *May v. City of Montgomery, AL*, 504 F. Supp. 2d 1235, 1237 (M.D. Ala. 2007). As the *May* court noted, "numerous decisions from the Eleventh Circuit and the former Fifth Circuit warn that, in the interest of comity, federal courts should not interfere with election law except to vindicate important federal interests under the Constitution or Voting Rights Act." *Id.* at 1237 (citing *Curry v. Baker*, 802 F.2d 1302, 1304–05 (11th Cir. 1986) (recognizing that federal courts should not be involved in settling state election disputes) and *Hubbard v. Ammerman,* 465 F.2d 1169, 1181 (5th Cir. 1972) (stating that federal courts "do not intervene in state election contests for the purpose of deciding issues of state law")).[3] The "power of the federal courts to throw out the results of a state election is '[d]rastic, if not staggering ... and therefore a form of relief to be

---

[3] Fifth Circuit decisions issued before October 1, 1981, are binding precedent in the Eleventh Circuit. *Stein v. Reynolds*, Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

7

guardedly exercised.'" *Burton v. State of Ga.*, 953 F.2d 1266, 1268 (11th Cir. 1992) (citing *Bell v. Southwell,* 376 F.2d 659, 662 (5th Cir. 1967)).

Here, Plaintiff essentially disputes the manner in which the coroner election votes were counted, insisting that the Democratic Party straight-party votes should have been added to the total number of votes he received. Doc. 1 at 1. He claims the failure to include these votes and install him as coroner violates his due process and equal protection rights under the Fourteenth Amendment of the U.S. Constitution. Doc. 1-1. He also claims his federal "common human rights" and "public accommodation rights," along with analogous state rights, have been violated. *Id.* However, he cites to no statute, regulation, or other provision enumerating his "common human rights," and this case clearly does not implicate the ADA's prohibition on discrimination in places of "public accommodations." As such, there is no basis to discuss any claims based on "common human rights" and "public accommodation rights" in this Recommendation. The undersigned will, however, address Plaintiff's claims that Defendants violated his due process and equal protection rights under the Fourteenth Amendment to the U.S. Constitution. As set forth below, the undersigned finds that the allegations in the Complaint fail to state claims of due process and equal protection violations and that this court lacks subject matter jurisdiction over the Plaintiff's claims. Because those determinations are dispositive, Defendants' remaining arguments for dismissal need not be addressed.[4]

---

[4] Although the issues discussed below are dispositive, the undersigned takes judicial notice of the publicly filed election results, as they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). In a Rule 12(b)(6) review, the court may consider an extrinsic document without converting the motion into one for summary judgment if the attached document is (1) central to

A.   DUE PROCESS CLAIMS

The Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.  This clause provides two different types of due process protections: procedural due process and substantive due process. *J.R. v. Hansen,* 803 F.3d 1315, 1320 (11th Cir. 2015) (citing *Maddox v. Stephens,* 727 F.3d 1109, 1118 (11th Cir. 2013)); *see also McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994).  Because Plaintiff does not identify the type of due process claim he is bringing, the undersigned is compelled to discuss each of them.

1.   **Procedural Due Process**

Procedural due process is "a guarantee of fair procedure." *Zinermon v. Burch,* 494 U.S. 113, 125 (1990).  In order to state a procedural due process claim, a plaintiff must allege (1) the deprivation of a constitutionally protected liberty or property interest, (2) state action, and (3) constitutionally inadequate process. *Hansen*, 803 F.3d at 1320 (11th Cir. 2015) (citing *Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir. 2003)).  Although due process requirements vary by context and involve a balancing of interests, the essential

---

plaintiff's claim and (2) undisputed. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* 600 F.3d 1334, 1337 (11th Cir. 2010);  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).  A document need not be physically attached to a pleading; if the document's contents are alleged in a complaint and no party questions those contents, a court may consider it if it meets the centrality requirement imposed in *Horsley. Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citations omitted).  Here, the contents of the election results are alleged in the Complaint, the contents are central to Plaintiff's clams in that they form the basis of the Complaint, and Plaintiff cannot dispute the results since he relied on them in framing his Complaint.  The results show that a total of 8,249 votes were cast in Butler County in the general election on November 6, 2018, and that Plaintiff received 3,488 votes while Defendant Garlock received 3,746 votes. Doc. 13-1.  The results also show that there were 2,335 Democratic straight-party votes.  If the results were calculated as Plaintiff suggests, it would mean that over 9,500 votes were cast in the coroner's race when only 8,249 votes were cast in all.  The same would be true for other offices – if the straight-party votes were added to a candidate's total, the combined number of votes received in one race would exceed the total number of ballots cast in the election.

requirements of the Fourteenth Amendment are notice and an opportunity to respond. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). This means that the opportunity to present reasons as to why a proposed action should not be taken is a fundamental due process requirement. *Id.*

In this case, Plaintiff challenges the way in which votes were tallied and insists that he is the elected coroner of Butler County, but he cannot claim that he did not have notice and an opportunity to respond. In *Curry v. Baker,* 802 F.2d 1302 (11th Cir. 1986), which involved a vote-counting dispute following illegal crossover voting in the primary runoff election for the democratic candidate for governor of Alabama, the plaintiffs alleged that the State Democratic Executive Committee used the wrong methods and evidence to count votes and, as a result, certified the wrong candidate as the winner. *Id.* at 1305. In holding that the plaintiffs failed to establish a procedural due process claim, the Eleventh Circuit recognized that "Alabama law provides an adequate procedure for addressing election irregularities."[5] *Id.* at 1316–17 (citing Code of Ala. § 17-15-1 *et seq.*). In election-based due process claims, a federally protected right is implicated only when the entire election process—including the state's administrative and judicial review—fails to afford fundamental fairness. *Id.* (citation omitted). Because state process was available but unused, the plaintiffs in *Curry* could not show that state process was constitutionally inadequate. *Id.; see also McKinney,* 20 F.3d at 1563–64 (finding that state had not deprived

---

[5] The *Curry* plaintiffs alleged a substantive due process claim; however, the Court addressed procedural due process because the plaintiff's "arguments tend[ed] to stray into the area of procedural due process." 802 F.3d at 1319 n.8.

10

plaintiff of due process since courts had power to review public employee termination and scope of review encompassed due process claims); *Cotton v. Jackson*, 216 F.3d 1328, 1330–31 (11th Cir. 2000) (recognizing that it is the failure to provide adequate procedures to remedy a procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim and concluding, because adequate state remedies were available, that plaintiff failed to state a procedural due process claim). As in *Curry* and the other cases cited above, because Alabama provides an adequate process through which Plaintiff could have challenged the ballot totals but failed to do so, he cannot show a constitutionally inadequate process. Therefore, his Complaint fails to state a procedural due process claim under the Fourteenth Amendment.

### 2. Substantive Due Process

"Substantive due process is a doctrine that has been kept under tight reins, reserved for extraordinary circumstances." *Nix v. Franklin Cty. School Dist.*, 311 F.3d 1373, 1379 (11th Cir. 2002). "[N]ot every wrong committed by a state actor rises to the level of a 'constitutional tort' sufficient to trigger a substantive due process violation… [S]ubstantive due process is violated by state conduct that 'shocks the conscience' or constitutes force that is 'brutal' and as such 'offend[s] even hardened sensibilities.'" *Lee v. Hutson*, 810 F.2d 1030, 1032 (11th Cir. 1987) (citations omitted); *see also Maddox*, 727 F.3d at 1119 (noting that "the Constitution does not protect against all encroachments by the state onto interests of individuals" (quoting *Robertson v. Hecksel*, 420 F.3d 1254, 1262 (11th Cir. 2005)); *Swanson v. Pitt*, 330 F. Supp. 2d 1269, 1278 (M.D. Ala. 2004) (stating that a substantive

due process violation requires an action that is "arbitrary and conscience shocking" (quoting *Waddell v. Hendry County Sheriff's Office,* 329 F.3d 1300, 1305 (11th Cir. 2003)).

In *Curry*, *supra*, plaintiffs alleged that voters' substantive due process rights were "diluted and debased" by the manner in which crossover votes were counted. *Id.* at 1314. In rejecting this argument and finding no substantive due process deprivation, the Eleventh Circuit stated, "Although federal courts closely scrutinize state laws whose very design infringes on the rights of voters, federal courts will not intervene to examine the validity of individual ballots or supervise the administrative details of a local election. Only in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation." *Id.* at 1314 (citing *Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978) (internal citation omitted)). The court further recognized the general rule that, "if the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated…. Such a situation must go well beyond the ordinary dispute over the counting and marking of ballots." *Id.* at 1315 (quoting *Duncan v. Poythress,* 657 F.2d 691, 703 (5th Cir. 1981)). Ultimately, the court held that the plaintiffs' dispute over how the State Democratic Election Committee counted the crossover votes was an "ordinary dispute over the counting of marking of ballots" and "did not rise to the level of a constitutional violation." *Id.* at 1316.

Similar results have been reached in other cases challenging the manner in which votes were counted. *See Siegel v. LePore*, 234 F.3d 1163, 1186–89 (11th Cir. 2000) (J. Anderson, concurring) (in dispute over the way ballots were counted in 2000 presidential election, where ballots were counted differently from county to county and method of

12

counting had been changed mid-count in one county, allegations of unreliability or inaccuracy failed to rise above a "garden variety" dispute over counting ballots); *Ganza v. Aguirre*, 619 F.2d 449, 452 (5th Cir.), *reh'g denied*, 625 F.2d 1016 (1980) (where plaintiff alleged election officials cost him the election by negligently and unlawfully performing the vote count, court found no constitutional deprivation claim and refused to intervene even though votes counted incorrectly threw election to wrong candidate); *Johnson v. Hood*, 430 F.2d 610 (5th Cir. 1970) (where plaintiffs alleged that county election commissioner's decision to reject ten ballots was improper, court held that, even if true, allegations failed to support a valid constitutional claim); *Swanson*, 330 F. Supp. 2d at 1278 (where Democratic party officials concluded that bylaws required plaintiff to request and receive permission from the executive board before seeking a candidacy because he was changing parties, court held that conduct was not conscience-shocking).

In the instant case, Plaintiff alleges no facts that touch on an election process that is patently and fundamentally unfair so as to state a substantive due process claim under the Fourteenth Amendment. Instead, his Complaint concerns the straight-party votes and whether they are already included in the total number of votes he received. As the cases cited above clearly demonstrate, Plaintiff's allegations amount to an ordinary dispute over the counting of ballots and, as such, fall far short of stating a claim of a substantive due process violation under the Fourteenth Amendment.

  **B. EQUAL PROTECTION CLAIM**

The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

amend. XIV.  This mandates that all similarly-situated persons should be treated the same. *Hope for Families & Cmty. Serv., Inc. v. Warren*, 721 F. Supp. 2d 1079, 1135 (M.D. Ala. 2010) (citing *Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)); *see also Ross v. Moffitt,* 417 U.S. 600, 609, (1974) (stating that the equal protection clause emphasizes a state's disparity in treatment between classes of individuals whose situations are "arguably indistinguishable").  Under the Equal Protection Clause, states cannot make distinctions that burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference (the "class of one" theory). *Foxborough Dev. Corp. v. City of Hahira*, No. 09CV106, 2011 WL 338618, at *5 (M.D. Ga. Jan. 31, 2011); *see also Arthur v. Thomas*, 674 F.3d 1257, 1262 (11th Cir. 2012) (internal citations omitted).  Here, Plaintiff does not allege that he is a member of a protected class or that Defendants violated a fundamental right; therefore, the undersigned concludes that Plaintiff attempts to assert a "class of one" equal protection claim.  In such a claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306–07 (11th Cir. 2009) (citations omitted); *see also Ford v. Strange*, No. 13CV214, 2013 WL 6804191, at *18 (M.D. Ala. Dec. 23, 2013), *aff'd,* 580 F. App'x 701 (11th Cir. 2014) (citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)).

Plaintiff's Complaint fails with respect to these requirements.  He alleges that his equal protection rights were violated because the straight-party votes have not been added to his total number of votes, but he fails to allege that he was treated differently than others

14

who were similarly situated. In fact, Defendants stated in their response that all candidates' ballot totals were computed in the same manner (i.e., that all straight-party votes were included in each candidate's ballot total). Doc. 13 ¶ 4. Plaintiff never disputed this claim. Thus, Plaintiff has made no showing that he was similarly situated in the relevant aspects to others who received more favorable or different treatment. *See, e.g., Campbell v. Rainbow City, Ala.,* 424 F.3d 1306, 1314–17 (11th Cir. 2006) (rejecting an equal protection claim where developer had not established that other projects were similarly situated in terms of factors such as proposed use, number of variances sought, procedural status, and documentation presented to zoning board). There is simply no allegation of anyone being similarly situated to Plaintiff but being treated differently than Plaintiff.

Plaintiff also does not allege that he has suffered intentional discrimination. It is well established that proof of discriminatory intent or purpose is necessary for an equal protection claim. *Parks v. City of Warner Robins,* 43 F.3d 609, 616 (11th Cir. 1995) (citing *Hernandez v. New York,* 500 U.S. 352, 359–60 (1991)). A mere error, mistake in judgment, or even an arbitrary administration of a statute, without intentional discrimination, does not violate the equal protection clause. *E & T Realty v. Strickland,* 830 F.2d 1107, 1113–14 (11th Cir. 1987). Plaintiff does not identify the type of discrimination he allegedly suffered, and his Complaint is devoid of any facts supporting a conclusion that he was discriminated against.

In his response to the State Defendants' and County Defendants' Motions to Dismiss, Plaintiff filed an affidavit declaring that he became the "first non-white" coroner of Butler County. Doc. 31 ¶ 3. This statement may fairly be construed to mean that Plaintiff

believes he was discriminated against on the basis of race. However, a plaintiff cannot amend a complaint in a brief responding to a motion to dismiss. *See Jallali v. Nova Se. Univ., Inc.,* 486 F. App'x 765, 767 (11th Cir. 2012) (citing *Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir. 2007)). An affidavit attached to a response to a Rule 12(b)(6) motion to dismiss that was not attached or incorporated into a complaint does not modify the complaint and cannot be considered in deciding the motion to dismiss. *Scottsdale Ins. Co. v. ULGM, Inc.*, No. 14CV21084, 2014 WL 11906638, at *1 (S.D. Fla. July 14, 2014) (citing *Jordan v. Miami–Dade Cnty.*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006) (internal citations omitted)). Accordingly, because Plaintiff's affidavit was not attached to or incorporated in his Complaint, the undersigned cannot consider it in ruling on the motion to dismiss. It should be noted, however, that even if it had been considered, the affidavit would not save Plaintiff's equal protection claim. Plaintiff's statements about race are vague and conclusory and do not amount to an allegation that he was intentionally discriminated against on the basis of race. Further, as discussed above, Plaintiff failed to make allegations that he was treated differently than others who were similarly situated. Thus, the affidavit indicates that Plaintiff's equal protection claim is based on race, but it contains no new factual allegations that would support any cause of action alleged in his Complaint. *See* Doc. 31.

    In short, Plaintiff alleges no facts showing a similarly situated comparator who was treated differently and no facts that would allow the Court to make any plausible inference that the treatment he received was based on racial discrimination or any other type of

discrimination.  In view of a complete absence of supporting facts, Plaintiff has failed to state a claim for a violation of his Fourteenth Amendment equal protection rights.

### C.   PLAINTIFF'S STATE COURT CLAIMS

A federal district court with original jurisdiction over federal claims may assume supplemental jurisdiction over related state law claims, but the court may decline to exercise supplemental jurisdiction if the claim raises a novel or complex issue of state law, the state law claim predominates, the court has dismissed all federal claims, or there are other compelling reasons to decline jurisdiction. 28 U.S.C. § 1367(a) and (c); *May*, 504 F. Supp. 2d at 1237.  Because the undersigned recommends that Plaintiff's federal claims be dismissed and without addressing whether Plaintiff's allegations are sufficient to support any state law claims, the undersigned recommends that this Court decline to exercise supplemental jurisdiction over any state law claims in Plaintiff's Complaint.

### V.   CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge finds that the allegations in Plaintiff's Complaint fail to state a claim for a violation of his due process rights or equal protection rights.  Consequently, because there are no cognizable federal claims in the Complaint, this Court does not have subject matter jurisdiction over Plaintiff's dispute regarding the manner in which the votes for Butler County coroner were tallied. Accordingly, the undersigned RECOMMENDS the following:

1. Defendants' Motions to Dismiss (Docs. 13, 15, and 34) be GRANTED; and
2. All remaining pending motions be denied as moot.

It is further

ORDERED that the Plaintiff is DIRECTED to file any objections to the said Recommendation on or before **August 14, 2019**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The Plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 31st day of July, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE